# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>JOHN THOMAS MCCROREY and JULIE LYNNE MCCROREY,<br><br>    Debtors. | Case No. 18-00696-NGH<br><br>Chapter 13 |

## MEMORANDUM OF DECISION

**RELEVANT FACTS**

On May 31, 2018, debtors John Thomas McCrorey and Julie Lynne McCrorey ("Debtors") filed a chapter 13 bankruptcy petition. Doc. No. 1. In their schedules, they listed Wells Fargo Dealer Services as a creditor holding a claim in the amount of $10,961.33 but noted the collateral had been repossessed. *Id.* at schedule F at ¶ 4.6.

On January 3, 2019, Debtors confirmed a plan, which required them to make payments for 60 months, and which provided no payments to unsecured creditors. Doc. Nos. 53 & 62. On September 12, 2023, the chapter 13 trustee, Kathleen A. McCallister ("Trustee"), filed a "Notice of Completion of Plan" in which she stated that Debtors had completed all payments due under the confirmed plan and indicated that a final report and account would be filed once all issued checks had cleared. Doc. No. 133. The notice recommended that Debtors' discharge be granted, and on September 19, 2023, the order

MEMORANDUM OF DECISION - 1

of discharge was entered. Doc. No. 137. The final report and accounting has not yet been filed and the case remains open.

In 2015, three years prior to the bankruptcy filing, Debtors had a 2008 Ford Edge repossessed by Wells Fargo Bank. Apparently Wells Fargo misapplied at least one of Debtors' payments on the vehicle, and on November 7, 2023, issued a check in the amount of $4,883.43, which was remitted to Trustee by Wells Fargo. Subsequently, Trustee and Debtors submitted a stipulated order acknowledging the funds resulted from a pre-petition claim and authorizing their payment into the plan for disbursement to unsecured creditors according to its terms.

Despite Debtors' agreement, the Court had concerns with this approach and on November 20, 2023, filed a notice regarding the proposed agreement that required Trustee to provide citations in support of her authority to proceed in this fashion. Doc. No. 139. She timely did so on December 13, 2023. Doc. No. 140. After considering the submissions of the parties, as well as applicable law, this Court concludes it will not sign the proposed order and directs that the funds be remitted to Debtors.[1]

**ANALYSIS**

As agreed by Debtors and Trustee, and pursuant to the Bankruptcy Code, the funds are the result of a pre-petition claim and as such, are property of the bankruptcy

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION - 2

estate.  §§ 541(a)(1) & 1306(a)(1).  The question is how they may be paid to creditors at this late date.

If the funds are viewed as a payment by Debtors into the plan, the plan would require modification; however pursuant to § 1329(c), modification is not possible after Debtors have completed all 60 months of payments.  Section 1329(a) provides that a confirmed plan may be modified "[a]t any time after confirmation of the plan, *but before the completion of payments under such plan*[.]" (emphasis added).  Courts have strictly enforced this provision. *See Danielson v. Flores (In re Flores)*, 735 F.3d 855, 859 (9th Cir. 2013) (en banc) (plan modification must occur before the completion of payments under the plan); *In re Profit*, 283 B.R. 567, 573 (9th Cir. BAP 2002) ("Under § 1329(a), a chapter 13 plan cannot be modified in any respect after payments are completed."). Trustee does not seek to modify the plan, and the parties have not agreed to modification in their proposed stipulated order.

On the other hand, if the funds are viewed as an asset "recovered" by the Trustee when Wells Fargo mailed it to her, a modification may not be required.  The Court turns to the terms of the confirmed plan, by which both Trustee and Debtors are bound.  A plan is a contract between the debtor and the debtor's creditors. *Derham-Burk v. Mrdutt (In re Mrdutt)*, 600 B.R. 72, 76–77 (9th Cir. BAP 2019) ("The order confirming a chapter 13 plan, upon becoming final, represents a binding determination of the rights and liabilities of the parties as specified by the plan."); *In re Alonso*, 570 B.R. 622, 629–30 (Bankr. D. Idaho 2017) ("[O]nce confirmed, the terms of a chapter 13 plan bind not only creditors and the trustee, but also the debtors.").  While the plan provides for no payments to

MEMORANDUM OF DECISION - 3

unsecured creditors, it does provide in Part 5 that "[a]llowed nonpriority unsecured claims that are not separately classified will be paid, pro rata from, the funds remaining after disbursements have been made to all other creditors provided for in this plan."  Doc. No. 53.  Presumably, it is under this provision that Trustee intends to distribute the funds from Wells Fargo to unsecured creditors.

There is a separate provision of the plan that curtails such an action under these facts, however.  Under Part 7, property of the estate vests in Debtors at plan confirmation. *Id.*  As such, even though §§ 541(a) and 1306(a)(1) decree that the Wells Fargo funds are estate property, confirmation of the plan on January 3, 2019 vested them in Debtors.

Trustee cited two cases to support administration of these funds at this late date.  Both are distinguishable.  The first is *In re Lori B. Preston*, Case No. 06-40557-JDP (Bankr. D. Idaho 2006).  That was a chapter 13 case in which the debtor had completed payments and received a discharge.  It was reopened roughly a year and a half after it was closed to permit the trustee to administer a personal injury settlement.  One key plan provision distinguishes *Preston* from the case at bar.  In a section titled "Post-Confirmation Recovery of Property," the debtor checked the box providing that:

> The trustee shall retain the right, post confirmation, to recover moneys, to recover property and to avoid liens pursuant to 11 U.S.C § 541, et seq.  Any such recovery or avoidance shall, when liquidated, be disbursed to creditors as additional disposable income, in accordance with 11 U.S.C. § 1325(b)[.]

*In re Lori B. Preston*, Case No. 06-40557-JDP at Doc. No. 27 ¶ 3.  That provision is lacking in Debtors' plan.

MEMORANDUM OF DECISION - 4

The next case cited by Trustee is *In re Emery*, 11-01877-TLM (Bankr. D. Idaho 2011). In that case, debtors had disclosed ownership of an interest in an LLP, but when one of the debtor's parents passed away during the pendency of the bankruptcy case, the trustee moved the Court to preserve unadministered assets. *Id.* at Doc. No. 66. In that case, the confirmed plan had the same provision as that in *Preston*. Doc. No. 3 at ¶ 2. In fact, in her motion seeking to administer that post-petition asset, the trustee relied on the authority given her through that provision. Doc. No. 66 at ¶ 7. Notably, the trustee in *Emery* is the same trustee appointed in the case presently before the Court.

The final case cited by Trustee in her brief is *HomEq Servicing Corp. v. Hauf (In re Hauf)*, No. 4:06-cv-83-CDL, 2007 WL 196857 (M.D. Ga. Jan. 23, 2007). That case addresses whether a modification is required to administer an asset after a bankruptcy case has concluded. In *Hauf*, the debtors had reopened a completed chapter 13 case to add a cause of action against their mortgage holder, and "vest" the chapter 13 trustee with the power to prosecute the action. *Id.* at *3. The bankruptcy court permitted the reopening and vesting, holding that if the debtors consent to the funds being paid through the plan, then no modification is necessary despite the fact that the plan could not be modified. *Id.* at *4. The bankruptcy court reasoned that a plan did not need to be modified if the debtors consented and creditors are not treated more adversely than they had been treated in the plan. But, if the trustee planned to treat the property in a matter contrary to the debtors' personal interest and without their consent, then a modification was necessary. *Id.* The bankruptcy court stated:

MEMORANDUM OF DECISION - 5

> [But,] it seems to me that if debtors come into money, from an inheritance, from winning the lottery, from a cause of action, from a gift, from whatever source, and the debtors consent to that money being paid through their Chapter 13 plan to unsecured creditors, that doesn't require a modification. The trustee can take those funds and pay them on a pro rata basis up to a hundred percent to the unsecured creditors. So the fact that the plan can't be modified, it seems to me, is not a reason to say that the trustee cannot administer the asset.

*Id.* at *5 (Bankr. Hr'g Tr. 77:14-78:20, June 13, 2006.)  The mortgage holder appealed, and the district court affirmed, citing the bankruptcy court's equitable powers under § 105(a).  *Id*.

The *Hauf* decision was criticized in *In re Leahey*, No. 11-11906-ABA, 2017 WL 4286136, at *1 (Bankr. D. N.J. Sept. 26, 2017).  In *Leahey*, the debtors confirmed a 60-month plan, but as the plan was progressing, one of the debtors had worker compensation claims arise post-petition.  He informed his counsel who attempted to amend schedules A and B, but neither the debtors nor their attorney ever followed through, and the asset was never disclosed nor was the plan modified.  *Id.*  The debtors completed their plan payments and received a discharge.  They later attempted to reopen their bankruptcy case to disclose the asset, but the bankruptcy court denied the motion as futile because the plan could not be modified to extend beyond 60 months.  On a motion to reconsider, the bankruptcy court distinguished cases that permitted the curing of an arrearage that was to be paid under the plan because in those cases, the debtors were completing payments owed under their confirmed plan, rather than modifying their commitments and creating a new plan.  *Id.* at *2.  "The important distinction here is that the Leaheys would not be

MEMORANDUM OF DECISION - 6

extending an existing plan to cure a default but attempting to add years to a completed plan to make a distribution not originally contemplated in their confirmed plan." *Id.*

In reaching this conclusion, the *Leahey* court considered *Hauf*, and disagreed with the decision, first, because the confirmed plan provided for the Leaheys only to contribute a specific sum to pay their creditors, with nothing going to unsecured creditors, and second, that the confirmed plan did not provide for distribution of proceeds of the lawsuits at issue. *Id.* at *3. The court noted that even had the Leaheys offered to assign the right to their lawsuit to the chapter 13 trustee, the trustee would have no authority under the Bankruptcy Code to distribute the proceeds to the Leaheys' unsecured creditors because the confirmed plan specifically provides that those creditors would receive nothing. Any assignment would first require plan modification. *Id.* at *4.

Finally, the *Leahey* court considered whether a provision in the plan requiring the trustee to make payments "under the plan" or to pay unsecured creditors on a pro rata basis—as is present in the plan at issue—might suffice. The *Leahey* court wrote that it "hesitates to endorse a scheme that affects an end run around the provisions of Title 11" and called such a strategy "objectionable." *Id.* at *4. This Court agrees.

The Court cannot locate any authority in the Bankruptcy Code or the confirmed plan to permit Trustee to distribute the Wells Fargo funds to Debtors' creditors. In short, under these particular circumstances, when all 60 months of plan payments have been made, the trustee has filed a notice that the plan has been completed and recommended entry of the discharge, and the discharge has in fact been entered, and finally that there is

MEMORANDUM OF DECISION - 7

no plan provision permitting Trustee to recover and administer post-confirmation assets, the Court can discern no authority for Trustee to administer these funds.

While Debtors and Trustee have agreed to this arrangement, the Court still must approve their agreement. Because it cannot rely on a Bankruptcy Code section or plan provision, it would have to do so as an exercise of its equitable powers under § 105(a). To this end, the Supreme Court has observed:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.

*Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014) (internal citations omitted). As such, under these facts, the Court declines to exercise its discretion to approve the arrangement agreed to by the parties, and instead directs Trustee to remit the Wells Fargo funds to Debtors.

DATED: January 26, 2024

_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 8